## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 13 2016, 9:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lamont Escoe,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

July 13, 2016

Court of Appeals Case No.
49A05-1510-CR-1628

Appeal from the Marion County
Superior Court

The Honorable Stanley Kroh,
Magistrate

Trial Court Cause No.
49F15-1404-FD-017604

**Bailey, Judge.**

# Case Summary

[1] Lamont Escoe ("Escoe") appeals his convictions of Battery[1] and Resisting Law Enforcement[2] as Class A misdemeanors. On appeal, Escoe claims that the State failed to present sufficient evidence to prove:

(1) Whether police officers entered Escoe's dwelling unlawfully;

(2) Whether police officers used unlawful force in their restraint of Escoe;

(3) Whether Escoe resisted law enforcement with force.

We affirm.

# Facts and Procedural History

[2] On April 4, 2014, Anna Pfau ("Pfau"), a Department of Child Services ("DCS") caseworker, visited Escoe and his family to look into a report of potential neglect of the three Escoe children. (Tr. at 36-37) When she knocked on the door, Elizabeth Escoe ("Elizabeth"), Escoe's wife, narrowly opened the door. (Tr. at 37) While Pfau identified herself, she was able to see and smell the apartment, noting the trash that covered the floor and a strong, unpleasant odor. (Tr. at 38) Elizabeth asked Pfau to wait outside for five minutes, and in

---

[1] Ind. Code § 35-42-2-1(a)(1)(B). We refer at all times to the versions of the statutes in effect at the time of Escoe's offenses.

[2] Ind. Code § 35-44.1-3-1(a)(1).

that time, Pfau called the police to assist with a child welfare check due to the state of the apartment. (Tr. at 39)

[3] Elizabeth returned shortly thereafter and told Pfau that Elizabeth would prefer doing the check another day, claiming she needed to take the children to a doctor's appointment. (Tr. at 40) Pfau informed Elizabeth that Pfau needed to do a child welfare check because of conditions in the apartment, and that the police were coming to assist her. (Tr. at 39) Escoe came to the door and told Pfau to "do what [she] had to do." (Tr. at 39) Pfau went down the stairs of the apartment to wait for the police to arrive. (Tr. at 41)

[4] Approximately five minutes later, Pfau observed the Escoes carrying their children to their car. (Tr. at 41) Pfau ran after them to try and talk them out of leaving. (Tr. at 43) At that time, Officer Jose Navarro ("Officer Navarro") had arrived on scene and began to engage the Escoes. (Tr. at 42) Officer Navarro observed the Escoes were very agitated, and advised them to speak with Pfau about the DCS report. (Tr. at 92) After several minutes of talking, during which the Escoes asserted their Constitutional rights were being violated, the Escoes escorted Pfau, Officer Navarro, and Officer Jacob Tranchant ("Officer Tranchant"), who had recently arrived on scene, to their apartment. (Tr. at 94)

[5] Both Officers Navarro and Tranchant entered the home briefly before making the decision to stand outside while Pfau conducted her business with the Escoes. (Tr. at 98) Escoe pulled out chairs and offered them to the officers, which the officers declined. (Tr. at 186) The officers left the door cracked to

ensure the safety of Pfau. (Tr. at 139) During the course of the DCS investigation, Escoe turned to the officers and stated, "You're not gonna take my kids, you're gonna have to fight." (Tr. at 139)

[6] After a while, Pfau stepped out to consult with her supervisor. When she returned, Pfau informed the officers that she and her supervisor had decided to remove the children. (Tr. at 140) Officers Navarro and Tranchant decided to call for a supervisor due to Escoe's threats. (Tr. at 140) Once Pfau had informed the Escoes of her decision, she, Elizabeth, and Officer Navarro went back to gather clothes for the children. (Tr. at 103) During this time, Sergeant Chad Osborne ("Sergeant Osborne") arrived on scene, and Officer Tranchant informed him of the situation. (Tr. at 156) Sergeant Osborne entered the apartment and observed that Escoe was greatly agitated. (Tr. at 157)

[7] Sergeant Osborne began to talk to Escoe, who then jumped off the couch and began pacing with clenched fists. (Tr. at 157) Sergeant Osborne decided to handcuff Escoe for the safety of all in the apartment. (Tr. at 158) Both Sergeant Osborne and Officer Tranchant attempted to grab an arm of Escoe in order to handcuff him, at which point Escoe spun around and struck Officer Tranchant in the shoulder, causing Officer Tranchant pain. (Tr. at 142-143)

[8] Following the battery, Officer Tranchant then locked Escoe in a bear hug to keep him from striking again. (Tr. at 143) Escoe stepped on the couch and pushed off from it, bringing Officer Tranchant and him to the ground. (Tr. at 143) Officer Navarro, Sergeant Osborne, and Officer Chris Morgan ("Officer

Morgan"), who had recently arrived on scene, began to deliver knee and hand strikes to Escoe in order to stop him from struggling against Officer Tranchant. Their attempts, however, did not end the struggle. In response, Officers Navarro and Morgan delivered a "drive stun" to Escoe's lower back with their tasers, after which Escoe complied with the orders to stop resisting and allowed himself to be handcuffed. (Tr. at 146) On April 8, 2014, he was charged with one count of Battery as a Class D felony[3], one count of Resisting Law Enforcement as a Class D felony[4], and one count of Resisting Law Enforcement as a Class A misdemeanor.

[9] At trial, Escoe presented the affirmative defense to the Battery charge under the "castle doctrine," which gives a defendant a statutory right to use reasonable force to protect his person and property against unlawful force and to end unlawful entry of public servants. The court instructed the jury on the defense.

[10] At the conclusion of the jury trial on August 5, 2015, Escoe was found guilty of Battery, as a Class D felony, and one count of Resisting Law Enforcement, as a Class A misdemeanor. He was acquitted of the Class D felony Resisting Law Enforcement charge. On September 16, 2015, the trial court reduced the Class D felony to a Class A misdemeanor because Escoe was a first-time offender,

---

[3] I.C. § 35-42-2-1(a)(2)(A). This offense is now a Level 5 felony under I.C. § 35-42-2-1(f)(5)(A).

[4] I.C. § 35-44.1-3-1(b)(1)(B). This offense is now a Level 5 felony.

and entered a sentence of 365 days on each count, with 361 days suspended, to be served concurrently. This appeal followed.

# Standard of Review

[11] When reviewing a claim of insufficient evidence, we consider only the probative evidence and reasonable inferences supporting the judgment, and we will not reweigh the evidence or the credibility of witnesses. *Sargent v. State*, 875 N.E.2d 762, 767 (Ind. Ct. App. 2007). We will affirm a conviction if all probative evidence and reasonable inferences allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Murrell v. State*, 960 N.E.2d 854, 857 (Ind. Ct. App. 2012). When reviewing a claim of insufficiency to rebut an affirmative defense, we use the same standard. *Id.*

# Battery and the Castle Doctrine Defense

[12] The Indiana Code provides:

> (i) A person is justified in using reasonable force against a public servant if the person reasonably believes the force is necessary to:
>
> > (1) Protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force;
> >
> > (2) Prevent or terminate the public servant's unlawful entry or attack on the person's dwelling, curtilage, or occupied motor vehicle; or

> (3) Prevent or terminate the public servant's unlawful trespass on or criminal interference with property lawfully in the person's possession, lawfully in possession of the member of the person's immediate family, or belonging to a person whose property the person has authority to protect.

I.C. § 35-41-3-2(i). We determined that this statute provides "an affirmative defense to the crime of battery on a law enforcement officer when that officer has unlawfully entered the person's dwelling." *Cupello v. State*, 27 N.E.3d 1122, 1124 (Ind. Ct. App. 2015).

[13] Escoe does not dispute that he committed the battery against Officer Tranchant. Rather, he claims that the police officers entered his home unlawfully and used unlawful force when they attempted to handcuff him. Thus, under this statute, Escoe asserts that the State failed to provide sufficient evidence to rebut this defense. As we have previously noted, our review focuses on the evidence most favorable to the judgment.

[14] The evidence before us reveals that Escoe invited the officers into his home. Both Officers Navarro and Tranchant testified that they did not intimidate or threaten Escoe in order to get him to let them into the home. (Tr. at 94, 137) Officer Navarro also testified that the Escoes were free to leave when he first approached them, and they chose not to do so. (Tr. at 115) Pfau provided similar testimony. (Tr. at 44-45) Furthermore, Escoe set out chairs for the officers when they first entered the apartment. (Tr. at 186-187) From this

evidence, a reasonable fact-finder could conclude that Escoe consented to the entry of the officers to his home.

[15] Next, we look to whether Officer Tranchant and Sergeant Osborne used lawful force in their initial attempt to handcuff Escoe. Indiana law charges police departments with, among other things, the duty to "preserve peace." I.C. § 36-8-3-10(a)(1). Police officers are thereby expected not only to enforce criminal laws, but also to aid those in distress, abate hazards, prevent potential hazards from materializing, and perform myriad other tasks to maintain the safety of the communities. *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993). In the present case, Escoe was pacing with clenched fists and making threats to fight the police officers. (Tr. at 102) Sergeant Osborne testified that in similar situations, where a person was acting as Escoe was, he had always handcuffed the person even when they were not under arrest. (Tr. at 158) Looking at the evidence most favorable to the judgment, a reasonable finder of fact could conclude that the police acted with lawful force.

[16] Thus, there was sufficient evidence to overcome Escoe's affirmative defense beyond a reasonable doubt. Any argument to the contrary is simply an invitation for us to reweigh the evidence, a task we will not do.

## Resisting Law Enforcement

[17] Under Ind. Code § 35-44.1-3-1, a person commits this offense when he "knowingly or intentionally: (1) forcibly resists, obstructs or interferes with a

law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties." I.C. § 35-44.1-3-1(a)(1). A person forcefully resists law enforcement when "strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." *Spangler v. State,* 607 N.E.2d 720, 723 (Ind. 1993). We have affirmed convictions for resisting law enforcement where a defendant pulled away when an officer attempted to handcuff him, *Lopez v. State*, 926 N.E.2d. 1090 (Ind. Ct. App. 2010), *trans. denied;* where a defendant was flailing or squirming her body while an officer was trying to handcuff her, *J.S. v. State*, 843 N.E.2d 1013 (Ind. Ct. App. 2006), *trans. denied;* and where a defendant "stiffened up" when police attempted to place him in a police vehicle, *Johnson v. State*, 833 N.E.2d 516 (Ind. Ct. App. 2005). "The element may be satisfied with even a modest exertion of strength, power, or violence." *Walker v. State*, 998 N.E.2d 724, 727 (Ind. 2013).

[18] Escoe argues that the State did not present sufficient evidence to prove the "force" element beyond a reasonable doubt. Officers Navarro and Tranchant and Sergeant Osborne all testified that once Officer Tranchant had attempted to restrain Escoe, Escoe fell on top of Officer Tranchant. (Tr. at 107, 143, 158) Furthermore, both Officer Tranchant and Sergeant Osborne stated that Escoe caused this fall by pushing off of the nearby couch. (Tr. at 143, 158) Once he was on top of Officer Tranchant, Escoe continued to struggle to get free of Officer Tranchant's hold by attempting to strike him. (Tr. at 144) Officer Navarro and Sergeant Osborne stated that Escoe did not comply with the order

to stop resisting until Officers Navarro and Morgan delivered drive stuns to Escoe's lower back. (Tr. at 107, 109, 161) Given this evidence, a reasonable finder of fact could conclude that Escoe resisted with force.

[19] Escoe attempts to counter by presenting evidence that he did not act with force, specifically citing that he "became a noodle" and exclaimed, "I am not trying to fight you" in an "emergency voice." (Tr. at 197, 198, 218) Once again, however, Escoe invites us to reweigh the evidence, which we will not do.

# Conclusion

[20] Sufficient evidence supports the convictions.

[21] Affirmed.

Bradford, J., and Altice, J., concur.