## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 25 2016, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dereck D. Hendricks, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | July 25, 2016 <br><br> Court of Appeals Case No. 49A04-1510-CR-1558 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Rebekah F. Pierson-Treacy, Judge <br><br> Trial Court Cause No. 49G19-1506-CM-019482 |

**Mathias, Judge.**

[1] Dereck Hendricks ("Hendricks") was convicted in Marion Superior Court of Class A misdemeanor resisting law enforcement. Hendricks appeals and raises

the following dispositive argument: whether the evidence is insufficient to support his conviction because the State failed to prove that the law enforcement officers were lawfully engaged in the execution of their duties.

[2] Concluding that the law enforcement officers were not lawfully engaged in the execution of their duties, we reverse and remand for proceeding consistent with this opinion.

## Facts and Procedural History

[3] Hendricks and Eteria Jackson ("Jackson") lived together with their two children at a residence on North Gale Street in Indianapolis. On June 2, 2015, Jackson called 911 at approximately 3:30 a.m. and reported that Hendricks had attempted to choke her while she was sleeping. Jackson stated that Hendricks was still at their home on North Gale Street with their teenaged children and nephew, and she was at her sister's home nearby. Jackson stated that she did not need an ambulance. She also told the 911 operator that she intended to go back to her house. The operator advised her not to return to the residence until the police had arrived.

[4] Indianapolis Metropolitan Police Officers Jason Thalheimer and Francisco Olmos were dispatched to Hendricks' and Jackson's residence. Hendricks appeared at the front door in response to the officers' knock. Hendricks asked why the officers were at his home, and he was informed that someone had called 911. Hendricks told the officers that they were not needed and told them to leave. Officer Thalheimer asked to come into the residence to speak with

Hendricks because "somebody's making allegations about somebody being choked inside the house, a female." Tr. p. 19. The officers told Hendricks that they wanted to come inside the residence to make sure no one had been choked. Hendricks refused to let them inside and told the officers to leave his property.

[5] Through the doorway of the home, the officers could see several people sitting on the couch in the living room, but nothing appeared to be amiss. The officers remained near the front door and began to discuss whether to call their supervisor about gaining entry into the residence. Within minutes, Jackson walked around the side of the house and stated that she had called 911. Jackson appeared to be uninjured.

[6] Jackson walked up to the front door and unlocked it with her key. She opened the door for the officers. She pointed at Hendricks and stated "[t]hat's him right there." Tr. pp. 43-44. The officers remained outside the doorway and asked Hendricks to come outside to speak with them. After Hendricks refused, the officers ordered him to come outside, and he still refused to do so.

[7] Intending to arrest Hendricks, both officers walked into the house and grabbed him by the arms to escort him outside. Hendricks jerked his arm away from Officer Olmos. The officer put Hendricks in a "bear hug" and struggled with him. Tr. p. 45. As they bumped into a wall, Officer Olmos told Hendricks to relax. Hendricks balled up his fists and tried to break free of the officers' hold. Officer Thalheimer instructed Office Olmos to tase Hendricks.

[8] Officer Olmos grabbed his taser and warned Hendricks to put his hands behind his back. Hendricks refused to do so and was tased. Hendricks fell to the ground, and Officer Thalheimer placed Hendricks' right hand behind his back. He then ordered Hendricks to place his left hand behind his back. Hendricks refused and Officer Olmos tased him again. The officers were then able to place Hendricks in handcuffs.

[9] Hendricks was subsequently charged with two counts of Class A misdemeanor resisting law enforcement. A bench trial was held on September 4, 2015. At trial, Hendricks argued that the officers unlawfully entered his residence in violation of the Fourth Amendment, and therefore, he had a right to resist the unlawful entry. The trial court disagreed and found Hendricks guilty as charged. Hendricks now appeals.

## Discussion and Decision

[10] Hendricks argues that the State failed to prove that the IMPD officers were lawfully engaged in the execution of their duties, and therefore, his resisting law enforcement conviction is not supported by sufficient evidence. When we review the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id*. We will affirm if substantial evidence of probative value exists such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*.

[11] To sustain a conviction for resisting law enforcement, the State had to prove that Hendricks knowingly or intentionally forcibly resisted, obstructed, or interfered "with a law enforcement officer or a person assisting the officer *while the officer is lawfully engaged in the execution of the officer's duties*[.]" Ind. Code § 35-44.1-3-1(a) (emphasis added). Hendricks argued that the officers unlawfully entered his residence without a warrant in violation of the Fourth Amendment, and therefore, he had a right to resist their unlawful entry.

[12] We also observe that in response to our supreme court's opinion in *Barnes v. State*, 953 N.E.2d 473 (Ind. 2011), our General Assembly enacted Indiana Code section 35-41-3-2, otherwise known as the "Castle Doctrine." *See Cupello v. State*, 27 N.E.3d 1122, 1129 (Ind. Ct. App. 2015).

> In enacting this section, the general assembly finds and declares that it is the policy of this state to recognize the unique character of a citizen's home and to ensure that a citizen feels secure in his or her own home against unlawful intrusion by another individual or a public servant. By reaffirming the long standing right of a citizen to protect his or her home against unlawful intrusion, however, the general assembly does not intend to diminish in any way the other robust self defense rights that citizens of this state have always enjoyed. Accordingly, the general assembly also finds and declares that it is the policy of this state that people have a right to defend themselves and third parties from physical harm and crime. The purpose of this section is to provide the citizens of this state with a lawful means of carrying out this policy.

***

(i) A person is justified in using reasonable force against a public servant if the person reasonably believes the force is necessary to:

(1) protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force;

(2) prevent or terminate the public servant's unlawful entry of or attack on the person's dwelling, curtilage, or occupied motor vehicle; or

(3) prevent or terminate the public servant's unlawful trespass on or criminal interference with property lawfully in the person's possession, lawfully in possession of a member of the person's immediate family, or belonging to a person whose property the person has authority to protect.

(j) Notwithstanding subsection (i), a person is not justified in using force against a public servant if:

* * *

(4) the person reasonably believes the public servant is:

(A) acting lawfully; or

(B) engaged in the lawful execution of the public servant's official duties.

Ind. Code § 35-41-3-2.

[13] Importantly, the Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV. The protection against unreasonable governmental searches and seizures are a principal mode of discouraging lawless police conduct. *Friend v. State*, 858 N.E.2d 646, 650 (Ind. Ct. App. 2006) (citing *Jones v. State*, 655 N.E.2d 49, 54 (Ind. 1995); *Terry v.*

*Ohio*, 392 U.S. 1, 12 (1968)). When the police conduct a warrantless search, the State bears the burden of establishing that an exception to the warrant requirement is applicable. *Id.*

[14] One recognized exception to the warrant requirement is a valid consent to entry and search. *Id.* (citing *Krise v. State*, 746 N.E.2d 957, 961 (Ind. 2001)). Specifically, "[t]he Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006).

[15] Howver, the United States Supreme Court created an exception to this rule in *Randolph* and held that "a physically present co-occupant's stated refusal to permit entry prevails, rending the warrantless search unreasonable and invalid as to him." *Id.*; *see also id.* at 115 ("Since the co-tenant wishing to open the door to a third party has no recognized authority in law or social practice to prevail over a present and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all").

[16] In this case, Jackson opened the door to the officers to allow them inside the residence. However, Hendricks, who also occupied and had authority over the home, unquestionably refused to allow Officers Olmos and Thalheimer into his

residence. This is precisely the circumstance that the Supreme Court addressed in *Randolph*.

[17] The State argues that *Randolph* does not apply to the circumstances before us because Jackson alleged that Hendricks choked her. In support of its argument, the State relies on the following discussion in *Randolph* concerning a law enforcement officer's ability to address allegations of domestic violence.

> No question has been raised, or reasonably could be, about the authority of the police to enter a dwelling to protect a resident from domestic violence; so long as they have good reason to believe such a threat exists, it would be silly to suggest that the police would commit a tort by entering, say, to give a complaining tenant the opportunity to collect belongings and get out safely, or to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much a spouse or other co-tenant objected. . . . Thus, the question whether the police might lawfully enter over objection in order to provide any protection that might be reasonable is easily answered yes.

547 U.S. at 118.

[18] Importantly, Jackson was not in the home when Hendricks refused to allow the officers to enter. When she returned to the house, she remained outside until she unlocked the door for the officers, and she did not appear to be injured.[1] Tr. pp. 34, 49; *see also* Appellant's App. p. 16 (stating that the arresting officer did

---

[1] Jackson was uncooperative with the arresting officer and refused to answer his question concerning whether her neck hurt. Also, Hendricks was not charged with domestic battery.

not observe any visible injures to Jackson's neck). The officers were available and able to provide protection and assistance to Jackson if needed. Importantly, the officers did not enter a home to assist Jackson or to investigate an ongoing threat but entered the home intending to arrest Hendricks without an arrest warrant. Tr. pp. 39.

[19] We conclude, under these unique circumstances, that the exception established in *Randolph* applies, and the officers could enter the residence only if both Jackson and Hendricks consented to the officers' entry. We must therefore consider whether the officers' entry was valid under the exigent circumstances exception to the warrant requirement. *See Harper v. State*, 3 N.E.3d 1080, 1083 (Ind. Ct. App. 2014) (stating "[t]he warrantless arrest of a person in his or her home requires both probable cause and exigent circumstances . . . that make it impracticable to obtain a warrant first") (citations omitted).

[20] Jackson was not inside the home when the officers arrived, and the officers did not need to enter the home to protect her. The officers had no other information that some other person inside the home, either an adult or child, was in need of police assistance. The officers simply had no reason to enter the home without a warrant. Moreover, Officer Olmos or Thalheimer could have, at a minimum, requested an arrest warrant either by telephone or radio and waited outside Hendricks' residence until the warrant was issued. *See Harper*, 3 N.E.3d at 1084 n.5 (citing Ind. Code § 35-33-5-8).

For all of these reasons, we conclude that Officers Olmos and Thalheimer acted unlawfully when they entered Hendricks' home to arrest him. *See Harper,* 3 N.E.3d at 1085 (reversing Harper's resisting law enforcement conviction because the officers were not engaged in the law execution of their duties after unlawfully entering her residence)*; Adkisson v. State*, 728 N.E.2d 175, 178 (Ind. Ct. App. 2000) (concluding that "[b]ecause the arrest was not initiated in a public place and because no exigent circumstances existed, Deputy Spencer acted unlawfully when he forcibly entered Adkisson's residence to arrest her" for battery); *see also Cupello*, 27 N.E.3d at 1131-32. Because the State failed to prove that the officers were lawfully engaged in the lawful execution of their duties at the time they arrested Hendricks, the evidence is insufficient to support Hendricks' resisting law enforcement convictions.[2]

Reversed and remanded for proceedings consistent with this opinion.

Vaidik, C.J., and Barnes, J., concur.

---

[2] Because we reverse Hendricks' convictions, we do not address his claim that merging the convictions for the purposes of sentencing failed to rectify a double jeopardy violation.