Stastina **ADKISSON**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Appellee.

No. 49A05–9904–CR–193.

Court of Appeals of Indiana.

May 18, 2000.

Nathaniel Lee, Norman Reed, Lee Burns & Cossell, L.L.P., Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

STATON, Senior Judge

Stastina Adkisson appeals her conviction for resisting law enforcement, a class A misdemeanor. Adkisson raises one issue on appeal, which we restate as: whether the evidence was sufficient to support her conviction.

We reverse.

The facts most favorable to the verdict reveal that on August 24, 1998, Marion County Deputy Sheriffs Spencer, Peterson and Burton were dispatched to the Tudor Lake apartment complex to investigate a disturbance between neighbors. Initially, Deputy Spencer questioned Adkisson's neighbors, who reported that Adkisson struck and injured them, while Deputies Peterson and Burton questioned Adkisson about the alleged disturbance. They knocked at the entrance door of Adkisson's apartment and requested permission to enter her apartment, but she denied them permission. They proceeded to question her from outside her door.

Later, Deputies Peterson and Burton left Adkisson's doorway and went to question the neighbors, while Deputy Spencer came to Adkisson's doorway to question Adkisson. Deputy Spencer stood just outside Adkisson's open doorway while he

questioned her, and Adkisson remained inside her apartment. Adkisson answered some of Spencer's questions, but she refused to answer others. At some point, Adkisson attempted to shut the door on Deputy Spencer, but he prevented her from doing so by placing his foot in the doorway. Deputy Spencer then informed Adkisson that she was being arrested for battery and followed her into the residence. As Deputy Spencer entered her apartment, Adkisson pushed him and began to run down the hallway. Deputy Spencer followed Adkisson and sprayed her with mace. Adkisson continued to struggle and run from Deputy Spencer until he had maced her three times. Being helplessly subdued, Deputy Spencer and Deputy Peterson were able to handcuff her. Additional facts will be provided as necessary.

▰ Adkisson contends that the evidence was insufficient to support her conviction for resisting law enforcement. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995). We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if evidence of probative value exists from which the factfinder could find the defendant guilty beyond a reasonable doubt. *Id.*

To convict Adkisson of resisting law enforcement, a Class A misdemeanor, the State was required to prove that Adkisson (1) knowingly or intentionally; (2) forcibly resisted, obstructed, or interfered with; (3) a law enforcement officer; (4) while the officer was lawfully engaged in the execution of his duties as an officer. IND.CODE § 35–44–3–3(a)(1). Adkisson contends that the State failed to establish that Deputy Spencer was lawfully engaged in his duties as an officer. Specifically, Adkisson argues that Deputy Spencer's forcible entry into her home to arrest her was not lawful.

▰ ▪In general, a police officer must secure an arrest warrant before he may arrest a person for a misdemeanor that was not committed in his presence, but IND.CODE § 35–33–1–1(a)(5) allows an officer to make an arrest without a warrant when the officer has probable cause to believe that the person has committed a battery resulting in bodily injury. IND. CODE. § 35–33–1–1 (1998). In the instant case, Adkisson's neighbors reported to Deputy Spencer that Adkisson had struck them, cutting one's nose and busting the lip of another. Thus, Deputy Spencer arguably had probable cause to believe that Adkisson had committed battery resulting in bodily injury, and had the right to arrest her without a warrant. However, absent consent, the Fourth Amendment requires that even when probable cause for a warrantless arrest exists, an officer may only enter a defendant's home to make the arrest when exigent circumstances exist that make it impracticable to obtain a warrant first. *Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Mowrer v. State*, 447 N.E.2d 1129, 1131 (Ind.Ct.App.1983). Here, the record does not reveal, and the State does not argue, any exigent circumstances justifying Deputy Spencer's warrantless entry into Adkisson's apartment.

The State contends that exigent circumstances were not required because Adkisson was in the threshold of her home when Deputy Spencer initiated the arrest. In support of its argument, the State relies on *United States v. Santana*, 427 U.S. 38, 42, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). In *Santana*, immediately after the crime had been committed, police officers had probable cause to arrest Santana, but no warrant. They saw her standing in her open doorway as they approached the house. When they shouted "police", Santana retreated into her home. The police followed her inside and arrested her. In upholding the validity of the arrest, the United States Supreme Court held that Santana was in a public place when police

initiated the arrest, and that completion of the arrest by entry into Santana's home was justified by the exigent circumstance of hot pursuit. *Id.* at 43, 96 S.Ct. 2406. The Court concluded "that a suspect may not defeat an arrest which has been set in motion in a public place . . . by .the expedient of escaping to a private place." *Id.* The case at bar is distinguishable from *Santana* in two aspects. First, Santana was standing in the threshold of her residence when the police arrived, while Adkisson came to her apartment door in response to a police request to have her appear in the doorway. Second, the police informed Santana that she was under arrest before they entered her home; however Deputy Spencer did not inform Adkisson that she was under arrest until after he crossed the threshold of her apartment.

Our own supreme court recognized the importance of these distinctions in *Cox v. State*, 696 N.E.2d 853, 857–58 (Ind. 1998). In *Cox*, the court noted that "under *Payton* the police are generally not permitted to break the threshold of the home in order to make an arrest," but "[u]nder *Santana*, if police spot the suspect and identify themselves when the suspect is in view, they may pursue her into the home to complete the arrest." *Id.* at 857. However, the court went on to conclude that *Payton* and *Santana* leave unresolved the question of whether the police may cause the suspect to come into public view, i.e. the threshold, and then invoke *Santana* to enter the home without a warrant. *Id.* Although *Cox* does not definitively answer this question in Indiana, the court in dicta showed concern about the propriety of such a practice, stating:

> Opening the door to ascertain the purpose of an interruption to the private enjoyment of the home is not an invitation to enter, but rather is a common courtesy of civilized society. Attendant to this courtesy is the ability to exclude those who are knocking and preserve

> the integrity of the physical boundaries of the home.

*Id.* at 858. The foregoing logic is particularly apt in the instant case. The officers questioning Adkisson initially approached her closed door, not in hot pursuit, not to arrest her at all, but merely to gather information for a report. Adkisson specifically denied entry to Deputies Peterson and Burton, remained inside her apartment at all times, and further attempted to exercise her right to exclude Deputy Spencer from the sanctity of her apartment by shutting her door. Although Deputy Spencer had identified himself as an officer before Adkisson attempted to exclude him, he had not informed her that his purpose was to place her under arrest until he had crossed the threshold to prevent her from closing the door. Under these circumstances, we cannot conclude that Adkisson's arrest was initiated in a public place under *Santana*, justifying Deputy Spencer's entry into her home. *See United States v. Berkowitz*, 927 F.2d 1376, 1387 (7th Cir.1991). Because the arrest was not initiated in ·a public place and because no exigent circumstances existed, Deputy Spencer acted unlawfully when he forcibly entered Adkisson's residence to arrest her. Accordingly, we hold that Deputy Spencer was not lawfully engaged in the execution of his duties as a law enforcement officer. Thus, the evidence is insufficient to support Adkisson's conviction for resisting law enforcement.

We acknowledge that at first blush, our holding seems to contravene the modern rule "that a private citizen may not use force in resisting a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful." *Casselman v. State*, 472 N.E.2d 1310, 1315 (1985) (quoting *Williams v. State*, 160 Ind.App. 294, 311 N.E.2d 619, 621 (1974)). However, as the Indiana Court of Appeals pointed out in *Casselman*, the cases that support the foregoing rule, while based on

sound public policy, are inapposite because they do not involve unlawful arrests subsequent to an unlawful, forcible entry into a defendant's home. Id. at 1315.

In *Casselman,* an officer went to the defendant's residence to serve a writ of attachment of the body. The officer knocked on the defendant's door and the defendant answered. When the defendant acknowledged that he was Gerald Casselman, the officer identified himself and began to read the writ. Casselman interrupted the officer, asking him to contact Casselman's lawyer and then attempted to shut the door. When he did so, the officer reached for the door to prevent Casselman from closing it. Casselman pushed the officer but the officer grabbed the door and stuck his leg in it to keep it open. After a shoving match, Casselman retreated into his house. The officer followed, drew his service revolver, and took Casselman into custody. *Id.* at 1311–12. Casselman was subsequently convicted of resisting law enforcement.

This court reversed Casselman's conviction, concluding that the officer, by forcibly preventing Casselman from closing the door to his home, was not lawfully engaged in the execution of his duties. *Id.* In reaching this conclusion, the court differentiated those cases where it has been held that a citizen may not resist even an unlawful arrest, because those arrests occurred in public places and "the unlawfulness of the arrests arose from the absence of sufficient grounds for the arrests, not from the means used to effect the arrest." *Id.* at 1315. The court noted that there is "a greater privilege to resist an unlawful entry into private premises than to resist an unlawful arrest in a public place." *Id.* at 1316. The court further reasoned that where the arrest is attempted by means of a forceful and unlawful entry into a citizen's home, such entry represents the use of excessive force and the arrest cannot be considered peaceable. Therefore, a citizen has the right to reasonably resist the unlawful entry. *Id.* Although *Casselman*

concerned an arrest pursuant to civil process, we conclude that it applies equally to the circumstances in the case at bar, where an officer unlawfully enters a defendant's residence to effect a misdemeanor criminal arrest.

The evidence is insufficient to support Adkisson's conviction for resisting law enforcement. We reverse.

BAKER, J., and SULLIVAN, J., concur.