Charles E. SAPEN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A03–0609–CR–424.

Court of Appeals of Indiana.

July 20, 2007.

William J. Cohen, Elizabeth A. Bellin, Cohen Law Offices, Elkhart, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Charles E. Sapen ("Sapen") appeals his convictions for Resisting Law Enforcement, as a Class D felony,[1] and Operating While Intoxicated, as a Class A misdemeanor.[2] We reverse the convictions and remand for retrial on the Operating While Intoxicated count.[3]

### Issues

Sapen raises six issues for review. We address the issue that we find dispositive: whether the trial court erroneously admitted evidence obtained in violation of Sapen's Fourth Amendment rights.

Because we reverse the convictions, it is necessary to address an additional issue: whether there is sufficient evidence to permit Sapen's re-trial for Resisting Law Enforcement and Operating While Intoxicated.

### Facts and Procedural History

During the early morning hours of October 24, 2004, Elkhart County Sheriff Cap-

1.  Ind.Code § 35–44–3–3.

2.  Ind.Code § 9–30–5–2.

3.  Oral argument was conducted on April 12, 2007 at Saint Mary–of–the–Woods College in Saint Mary–of–the–Woods, Indiana. We commend counsel on the quality of their written and oral advocacy, and thank our host, Saint Mary–of–the–Woods College, for its hospitality.

tain Sean Holmes ("Captain Holmes") was patrolling for impaired drivers on county roads. At the intersection of county roads 109 and 102, Captain Holmes observed an SUV go beyond a stop sign and stop in the intersection. Captain Holmes turned his vehicle around, activated his overhead lights and followed the SUV.

Approximately forty-five seconds later, Captain Holmes pulled into a residence driveway behind the SUV, driven by Sapen. Sapen had parked his SUV in his garage, but had not closed the garage door. Sapen got out of his vehicle, and walked back to Captain Holmes. Captain Holmes asked if Sapen had seen his lights and Sapen replied in the negative. Captain Holmes detected a smell of alcohol and observed that Sapen had "red, glassy" eyes. (Tr. 59.) In Captain Holmes' opinion, Sapen "concentrated on walking." (Tr. 59.) The observations "indicated to [Captain Holmes] that further investigation was needed." (Tr. 59.) Sapen gave Captain Holmes his driver's license and stated that he needed to get his vehicle registration from his vehicle. Captain Holmes then "let him go back in." (Tr. 59.)

Captain Holmes walked back to his vehicle to notify dispatch of his location and soon noticed that Sapen was gone. Captain Holmes called out to Sapen, then entered Sapen's garage, and opened the door to the garage office. Sapen was inside and refused Captain Holmes' entreaties to come outside and perform field sobriety tests. Sapen repeatedly indicated that he was in his own home. He also reached into desk drawers, stating that he needed to contact his attorney. Inside the garage office, Captain Holmes detected the smell

of alcohol and observed that Sapen had a "little sway" in his movements. (Tr. 61.)

Captain Holmes grabbed Sapen's hand, and Sapen pushed back and pulled away. Captain Holmes threatened to use pepper spray to compel Sapen out of the garage office. Repeatedly stating that "he was home," Sapen continued to rummage in a desk drawer. Captain Holmes administered two bursts of pepper spray. Captain Holmes then insisted that Sapen "come out in fresh air," but Sapen replied he was hurt. (Tr. 67, Videotape.)

Captain Holmes got one handcuff on Sapen, who pulled away. Captain Holmes then "used the handcuff to bring Sapen to the ground." (Tr. 67.) During that process, Captain Holmes sustained a knuckle injury and a cut on his arm that caused "discomfort and swelling."[4] (Tr. 67.) Sapen was transported to the hospital for treatment of injuries from inhalation of pepper spray, but refused a chemical blood alcohol test at the hospital.

Sapen was charged with Operating While Intoxicated, as a Class A misdemeanor, Ind.Code § 9–30–5–2, and Resisting Law Enforcement, as a Class D felony, Ind.Code § 35–44–3–3(a). On November 5, 2005, Sapen filed a motion to suppress all evidence garnered as a result of Captain Holmes' entry into his home. After a hearing, the motion was denied. The trial court granted the State's motion in limine prohibiting Sapen from challenging at trial the lawfulness of Captain Holmes' residential entry. Sapen was brought to trial on May 8, 2006. Over Sapen's objection, the trial court instructed the jury that Captain Holmes' residential entry was lawful under the United States Constitution and the Indiana Constitution. On May 9, 2006, Sapen was convicted as charged.

---

4. In the Information for Resisting Arrest, the State alleged only pain as the bodily injury to elevate the offense to a Class D felony.

On July 12, 2006, the trial court sentenced Sapen as follows. Upon the Class D felony conviction, Sapen was sentenced to eighteen months imprisonment, with all but 90 days suspended to probation.[5] The ninety days was to be served on a home incarceration program with alcohol monitoring. Sapen received a concurrent one-year sentence for the Class A misdemeanor, all suspended to probation. Sapen's driver's license was suspended for ninety days, and he was also required to pay fines and make a written apology to Captain Holmes. He now appeals.

## Discussion and Decision

### I. Legality of Warrantless Entry

■ Before, during and after trial, Sapen has sought to challenge the lawfulness of Captain Holmes' entry into his home. The trial court refused to exclude evidence obtained as a result of Captain Holmes' warrantless entry, refused Sapen's proffered instructions on reasonable resistance, and issued a pre-trial order precluding Sapen from otherwise challenging the lawfulness of Captain Holmes' conduct. Additionally, over Sapen's objection, the jury was instructed as follows: "The officer's entrance into the defendant's home was lawful under the United States and the Indiana Constitutions." (App.78.) Sapen contends that he was essentially deprived of the opportunity to present his defense that he responded lawfully to a home entry that violated the Fourth Amendment to the United States Constitution. We agree.[6]

5. The Criminal Court Order, App. 26, incorrectly states that Sapen was convicted of Battery Resulting in Bodily Injury, a Class D felony.

6. Sapen also argues that Captain Holmes' conduct was unreasonable under Article I, Section 11 of the Indiana Constitution, by

■ A trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb its rulings only where it is shown that the court abused that discretion. *Griffith v. State*, 788 N.E.2d 835, 839 (Ind.2003). We view the circumstances in their totality to determine if there was substantial evidence of probative value to support the trial court's ruling. *Id.* at 839–40. However, when presented with a question of law, we review the ruling under a *de novo* standard. *Id.* at 839.

■ Both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution protect "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV; Ind. Const., art. I § 11. "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Id.* at 585, 100 S.Ct. 1371.

■ However, the presumption of unreasonableness that attaches to a warrantless entry can be overcome by a showing of exigent circumstances, which traditionally have included: 1) a suspect is fleeing or likely to take flight in order to avoid arrest; 2) incriminating evidence is in jeopardy of being destroyed or removed unless an immediate arrest is made; and

application of the reasonableness test set forth in *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind.2005), balancing the degree of suspicion, the degree of intrusiveness and the extent of law enforcement needs. However, we need not specifically address this argument because we find a Fourth Amendment violation.

3) hot pursuit or movable vehicles. *Snell-grove v. State*, 569 N.E.2d 337, 340 (Ind. 1991). Further, the Indiana Supreme Court has recognized an "emergency circumstances" exception for instances "where a violent crime has occurred and entry by police can be justified as a means to prevent further injury or to aid those who have been injured." *Id.* (citing *Tata v. State*, 486 N.E.2d 1025, 1028 (Ind.1986)). The warrantless arrest of a person in his or her home requires both probable cause and "exigent circumstances ... that make it impracticable to obtain a warrant first." *Adkisson v. State*, 728 N.E.2d 175, 177 (Ind.Ct.App.2000) (citing *Payton*, 445 U.S. at 576, 100 S.Ct. 1371).

In the present case, the State has strenuously contended that evidence destruction by alcohol absorption in the bloodstream is an exigent circumstance independently sufficient to support the warrantless entry and urges this Court to adopt the reasoning of a California Supreme Court decision. *See People v. Thompson*, 38 Cal.4th 811, 43 Cal.Rptr.3d 750, 135 P.3d 3 (Cal. 2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 446, 166 L.Ed.2d 317 (2006) (finding the dissipation of blood-alcohol evidence to constitute an exigent circumstance under the facts of that case). Nevertheless, a close reading of that case indicates that the Court did not intend to adopt a bright line rule that all DUI suspects may be pursued into a residence to guard against evidence destruction. Rather, the Court explained:

> The officers had good reason to believe that defendant, who had attempted to

flee out the back door upon learning of their presence, would escape again or otherwise act to conceal his intoxication if given the opportunity.... In holding that exigent circumstances justified the warrantless entry here, we need not decide—and do not hold—that the police may enter a home without a warrant to effect an arrest of a DUI suspect in *every* case. We hold merely that the police conduct here, taking into account all of the circumstances, was reasonable[.] ... In short, the state's intrusion into the home was the minimum necessary to effect the arrest and extended only to areas already exposed to public view. Under these circumstances, it was reasonable for the police to enter the home without a warrant in order to arrest defendant and thereby prevent the imminent destruction of evidence of his crime.

135 P.3d at 13–14 (emphasis in original) (internal citation omitted).

Our review of Indiana decisions does not reveal a published case in which an Indiana Appellate Court has held that alcohol dissipation independently constitutes an exigent circumstance sufficient to overcome the warrant requirement of the Fourth Amendment.[7] Rather, the circumstances presented have involved both alcohol dissipation and hot pursuit.

*Lepard v. State*, 542 N.E.2d 1347 (Ind. Ct.App.1989) involved factual similarities to the instant case. Officer Thornsbearry observed Lepard fail to make a complete stop on his motorcycle, disregard a traffic signal and go left of the center of the

---

**7.** In dicta, separate panels of this Court have suggested divergent outcomes. In *Zimmerman v. State*, 469 N.E.2d 11, 17 (Ind.Ct.App. 1984), while the Court found that consent to a blood draw was voluntarily given, the Court additionally observed that exigent circumstances were present when there existed a threat of the metabolic destruction of evi-

dence of a suspect's intoxication (i.e., the bodily absorption of alcohol in the bloodstream). On the other hand, the Court in *Justice v. State*, 552 N.E.2d 844, 847 (Ind.Ct.App.1990) stated, "absent an auto accident, the dissipation of alcohol in the blood does not alone create exigent circumstances [for taking a blood sample]."

roadway. *See id.* at 1348. Lepard pulled into his driveway and refused to provide requested documents. He smelled of alcohol and weaved while standing. Lepard entered his house despite Officer Thornsbearry's order to stop. *Id.* at 1348–49. In affirming the denial of Lepard's motion to suppress, the Court observed that the officer had probable cause to believe Thornsbearry had committed the misdemeanor of driving while intoxicated in her view and also stated, "The act of fleeing while being pursued by a police officer creates an exigent circumstance necessary to effectuate an in-home arrest." *Id.* at 1350. Here, the distinguishing fact is that Captain Holmes did not order Sapen to stop. Indeed, Captain Holmes testified that he allowed Sapen to walk back to his garaged vehicle, the normal repository for a vehicle registration form. It is apparent that Captain Holmes was not in "hot pursuit" of Sapen when Sapen re-entered his garage.

*State v. Straub,* 749 N.E.2d 593 (Ind.Ct. App.2001) presented an interlocutory appeal from the grant of a motion to suppress. In *Straub,* Officer Grable was pursuing a truck that had reportedly been driven erratically. Officer Grable lost the truck, but saw Straub run down a hill and fall. Officer Grable pursued him with orders to stop, but Straub continued to his apartment. Officer Grable entered the apartment and ordered Straub to come outside. Straub was transported to jail where a chemical breath test revealed that he had a. 17% blood alcohol content. *See id.* at 596. The trial court granted Straub's motion to suppress, and this Court, after reviewing the officer's actions with reference to the Fourth Amendment, reversed (with Judge Brook dissenting). *See id.* at 601. The *Straub* Court found that the State had met its burden to demonstrate exigent circumstances to overcome the presumption of unreasonableness that accompanies warrantless home en-

tries. *See id.* at 598. The "exigent circumstance" recognized was the need to preserve evidence of Straub's blood alcohol content. *Id.* at 600.

Nevertheless, it is clear that the facts of *Straub* also included flight from law enforcement. Noting that Officer Grable was in "continuous pursuit" of Straub, who had committed the misdemeanor of fleeing law enforcement in Officer Grable's presence, the *Straub* Court distinguished the facts of that case from those of *Timmons v. State,* 723 N.E.2d 916 (Ind.Ct.App.2000), *on reh'g,* 734 N.E.2d 1084 (Ind.Ct.App. 2000), *trans. denied.* In *Timmons,* the police officers had a tip that Timmons was involved in two hit-and-run incidents and saw that the vehicle outside his residence matched the description of the reported hit-and-run vehicle. Timmons refused to leave his residence. This Court held that the police were required to obtain a valid warrant before entering the residence. *Id.* at 920. On rehearing, it was observed that the police did not discover the defendant's intoxication until after entering the residence and affecting an illegal arrest. 734 N.E.2d at 1087. We find the circumstances of this present case more akin to those in *Timmons* than those in *Straub,* as the instant case involves an individual refusing to leave his home to cooperate with police, but not fleeing from police.

This Court has declined to find exigent circumstances to justify the entry into a private home where a substance of potential evidentiary value is dissipating, but the suspicious officer has no warrant and has not maintained continuous pursuit. *See Ware v. State,* 782 N.E.2d 478, 480 (Ind.Ct. App.2003) (holding that an officer who smelled burning marijuana while standing at an apartment door did not, without more, have exigent circumstances to justify his entry into the apartment although,

presumably, the marijuana was dissipating by burning).

In this case, Sapen walked into his home with permission. Captain Holmes did not order him to stop. Thus, Captain Holmes was not in "hot pursuit" that might have justified his warrantless entry to Sapen's home. It is also clear that Captain Holmes could have obtained a telephonic warrant prior to entering Sapen's home, but he did not. Indiana Code Section 35–33–5–8(a)(2) allows for the issuance of a search warrant "orally by telephone or radio." In *Timmons*, we observed that the "telephonic warrant statute was intended to encourage the procurement of warrants in situations involving exigent circumstances, when a warrant might not otherwise be sought." 723 N.E.2d at 920. And, although dissipation of alcohol without more does not constitute exigent circumstances to support a warrantless home entry, *see Straub*, 749 N.E.2d at 593 (involving alcohol dissipation plus flight), we think the provisions of our telephonic warrant statute might nevertheless be useful and lessen the need for warrantless searches in some instances when the metabolic destruction of evidence is at issue.

The trial court erred in admitting evidence obtained in violation of the Fourth Amendment and compounded the error by instructing the jury that Captain Holmes' entry was lawful. Because Sapen was denied a fair trial, we reverse his convictions for Resisting Law Enforcement and Driving While Intoxicated.

## II. Sufficiency of the Evidence

■ A defendant who succeeds in having his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction may be retried so long as there was sufficient evidence to support the conviction. *Lehman v. State*, 777 N.E.2d 69, 73 (Ind.Ct.App.2002). Thus, we must determine whether sufficient evidence supported Sapen's convictions. In so doing, we consider the evidence most favorable to the verdict and the reasonable inferences that can be drawn therefrom, without reweighing the evidence or assessing witness credibility. *Davis v. State*, 658 N.E.2d 896, 897 (Ind.1995).

■ To convict Sapen of Driving While Intoxicated as a Class A misdemeanor, as charged, the State was required to prove that he, while intoxicated, operated a vehicle in a manner that endangered a person. *See* Ind.Code § 9–30–5–2(b). Even excluding the evidence that we have determined was obtained in violation of the Fourth Amendment, there is evidence sufficient to permit the factfinder to conclude that Sapen committed the charged offense. Captain Holmes observed Sapen stop his vehicle in "the middle of the roadway." (Tr. 8.) Sapen freely admitted that he had consumed some alcohol. Prior to the home entry, in Sapen's driveway, Captain Holmes made the following observations:

> When he initially started coming back to me, one of the things I noticed is that he was concentrating on what he had to do. Concentrating on his walking. He wasn't necessarily, you know, falling down or anything. I just made the note that he was concentrating on what he was doing and I saw that his eyes were red and glassy which would coincide with the unusual driving behavior going through there. And then I instantly smelled a very strong odor of an alcoholic beverage on this breath when he spoke to me.

(Tr. 59.) As such, Sapen may properly be retried on this charge.

■ To convict Sapen of Resisting Law Enforcement as a Class D felony, as charged, the State was required to prove that Sapen forcibly resisted Captain

Holmes while Captain Holmes was lawfully engaged in the execution of his duties as an officer and thereby caused bodily injury, i.e., physical pain to Captain Holmes. *See* Ind.Code § 35–44–3–3(a)(1) and (b)(1)(B).

Sapen did not possess a common law right to resist an unlawful entry by a law enforcement officer. Nevertheless, although the common law rule that allowed a person to resist an unlawful arrest with reasonable force has been abrogated in favor of a legal remedy through civil actions, "[w]e have not ... interpreted this rule as a blanket prohibition that criminalizes any conduct evincing resistance where the means used to affect an arrest are unlawful." *Alspach v. State,* 755 N.E.2d 209, 211 (Ind.Ct.App.2001), *trans. denied.* We have recognized that a greater privilege exists to resist an unlawful entry into private premises than to resist an unlawful arrest in a public place. *Adkisson,* 728 N.E.2d at 179 (citing *Casselman v. State,* 472 N.E.2d 1310, 1315–16 (Ind.Ct.App. 1985)).

The *Adkisson* Court reversed a conviction for resisting law enforcement where the officer announced that defendant was under arrest for a misdemeanor after the officer entered defendant's house; the officer had made an illegal entry and thus was not lawfully engaged in the execution of his duties when the defendant resisted arrest. *See also Shoultz v. State,* 735 N.E.2d 818, 822 (Ind.Ct.App.2000) (reversing conviction for resisting law enforcement when arresting officer used excessive force), *trans. denied.* The forcible nature of a defendant's resistance, obstruction, or interference is an essential element of the offense that the State must prove at trial. *Id.* A person "forcibly resists" law enforcement by using strong, powerful, violent means to evade a law enforcement officer's rightful exercise of his or her duties. *Id.*

Here, according to Captain Holmes' testimony, Sapen initially "pushed back," "pulled away" and went behind his desk stating "I'm at home." (Tr. 64.) Captain Holmes was not injured during this initial physical encounter. After Sapen twice endured pepper spray, he again "pulled away." (Tr. 67.) The videotape reveals that Captain Holmes continued to insist that Sapen get up and come outside, while Sapen repeatedly protested that he was hurt. The standoff ended when Captain Holmes used a handcuff to bring Sapen to the ground and "during all that, received [injuries causing] discomfort and swelling." (Tr. 67.) The totality of the circumstances suggests that Captain Holmes' pain was self-inflicted after he chose to bring the already-debilitated Sapen to his knees. This conduct is substantially similar to that discussed in the *Shoultz* case, i.e., the "the officer has used unconstitutionally excessive force in effecting an arrest" and there is "the absence of evidence that the force used to resist an officer's excessive force was not itself disproportionate to the situation." *Id.* at 823.

We conclude that the State did not present sufficient evidence to establish that Sapen forcibly resisted Captain Holmes by strong, violent or powerful means to evade Captain Holmes' rightful exercise of his duties. Therefore, Sapen may not be retried upon the charge of Resisting Law Enforcement.

Reversed and remanded.

BAKER, C.J., and NAJAM, J., concur.