## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Apr 23 2015, 9:13 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eric Lynn,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | April 23, 2015<br><br>Court of Appeals Case No.<br>49A02-1410-CR-710<br><br>Appeal from the Marion Superior Court<br>The Honorable Anne Flannelly, Magistrate<br>Cause No. 49G17-1406-CM-32741 |

**Bradford, Judge.**

# Case Summary

[1] On June 22, 2014, Appellant-Defendant Eric Lynn and his long-time girlfriend, Melissa Linhart, engaged in a physical altercation. After law enforcement

officers were called to the scene, Linhart escorted the officers into the home she shared with Lynn. Lynn became belligerent after the officers asked Lynn for identification. During his interaction with the officers, Lynn charged at one of the officers, braced himself, and locked his legs and arms in an attempt to prevent the other officer from taking him to the ground. Lynn continued to struggle even after being brought to the ground by the officers.

[2] Lynn was subsequently charged with Class A misdemeanor resisting law enforcement. Lynn challenged the admission of the evidence relating to his arrest, claiming that the officers, who did not have a warrant, illegally entered his home. The trial court denied Lynn's challenge to the admission of the evidence, finding that Linhart, a co-inhabitant of the home, had consented to the officers' entry into the home. Following a bench trial, the trial court found Lynn guilty of Class A misdemeanor resisting law enforcement.

[3] On appeal, Lynn contends that the trial court abused its discretion in admitting the challenged evidence. Lynn also contends that the evidence is insufficient to sustain his conviction. Concluding that the trial court did not abuse its discretion in admitting the challenged evidence and that the evidence is sufficient to sustain Lynn's conviction, we affirm.

## Facts and Procedural History

[4] On June 22, 2014, Officers Jason Thalheimer and John Walters (collectively, "the Officers") of the Indianapolis Metropolitan Police Department were

dispatched to a reported domestic disturbance at Woodland Drive in Indianapolis. Upon arriving at the scene, the Officers encountered Linhart. Linhart, who was standing in front of the home in question, appeared upset. Linhart had a cut on the corner of her mouth and seemed as if she had been crying. Linhart informed the Officers that she lived in the home with Lynn, with whom she had been in a relationship for eleven years.

[5] Linhart was initially reluctant to tell the Officers what happened, but eventually told the Officers that she had been in a physical fight with Lynn. After the Officers asked Linhart where Lynn was, she directed the Officers to the home. Linhart then walked the Officers up to the front door, opened the door, pointed to Lynn who was lying inside on the floor, and escorted them into the home.

[6] When the Officers entered the home, Lynn was lying on the floor watching television. Lynn's parents, Estel and Brenda Lynn, were sitting on the couch. Officer Walters asked Lynn for identification. Lynn became belligerent. It was apparent to Officer Walters that Lynn had been drinking.

[7] Estel, who also appeared to be intoxicated "jumped up off the couch" and began to yell at the Officers. Tr. p. 39. Estel staggered over to Officer Walters and slapped Officer Walters on the back twice. Officer Walters then pushed Estel away. Estel, who again exhibited signs of extreme intoxication, lost his balance and "fell down to his butt." Tr. p. 40. After observing the interaction between Officer Walters and his father, Lynn "became very upset" and positioned himself in a manner which suggested that he was going to engage

the Officers in a physical altercation. Tr. p. 40. The Officers repeatedly instructed Lynn to sit down.

[8] Officer Walters told Lynn that he was under arrest for the battery of Linhart and instructed Lynn to place his hands behind his back. Lynn initially complied. However, after Officer Walters got one handcuff on Lynn, Estel got up and said "you're not going to f[******] arrest my son." Tr. p. 42. Estel then made a motion as if he was going to charge Officer Walters. Officer Thalheimer interceded, got between Officer Walters and Estel, and pushed Estel down onto the nearby couch. Lynn attempted to "jump up" and charge Officer Thalheimer.

[9] After Lynn attempted to charge Officer Thalheimer, Officer Walters, who still had one handcuff on Lynn, attempted to force Lynn to the ground. Lynn, who was determined to aid his father, braced himself and locked his legs and arms in an attempt to prevent Officer Walters from taking him to the ground. Officer Walters eventually managed to use his body weight to force Lynn to the ground. Lynn continued to struggle even after Officer Walters managed to force Lynn to the ground. After "some struggle," Officer Walters was able to bring Lynn under control. Tr. p. 43.

[10] On June 23, 2014, the State charged Lynn with Class A misdemeanor domestic battery, Class A misdemeanor battery resulting in bodily injury, and Class A misdemeanor resisting law enforcement. Prior to trial, Lynn filed a motion seeking to suppress all evidence relating to his arrest. In support of this motion,

Lynn claimed that the challenged evidence should be suppressed because the police entry into his home was unlawful. Also prior to trial, the State moved to dismiss the battery charges.

[11] The trial court conducted a suppression hearing on September 9, 2014, immediately prior to trial. Following the hearing, the trial court denied Lynn's motion to suppress. The trial court then conducted a bench trial, after which it found Lynn guilty of Class A misdemeanor resisting law enforcement. The trial court sentenced Lynn to one year, with credit for time served and the remainder suspended to probation.

# Discussion and Decision

[12] Lynn contends that the trial court abused its discretion in admitting certain evidence at trial. He also contends that the evidence is insufficient to sustain his conviction for Class A misdemeanor resisting law enforcement.

# I. Admission of Evidence

[13] Lynn contends that the trial court abused its discretion in admitting evidence relating to his alleged act of resisting law enforcement following the warrantless entry into his home by the Officers. In raising the contention, Lynn argues that admission of the challenged evidence was improper under both the Fourth Amendment to the United State Constitution and Article 1, Section 11 of the Indiana Constitution because it occurred immediately following the Officers' unlawful warrantless entry into his home. The State, for its part, argues that the

evidence was admissible because Linhart, Lynn's co-habitant in the home, consented to the Officers' entry into the home.

## A. Standard of Review

Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. *Ackerman v. State*, 774 N.E.2d 970, 974-75 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. We also consider uncontroverted evidence in the defendant's favor. *Id.*

A trial court has broad discretion in ruling on the admissibility of evidence. *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003) (citing *Bradshaw v. State*, 759 N.E.2d 271, 273 (Ind. Ct. App. 2001)). Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id.* (citing *Bradshaw*, 759 N.E.2d at 273). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* (citing *Huffines v. State*, 739 N.E.2d 1093, 1095 (Ind. Ct. App. 2000)).

## B. Analysis

### 1. The Fourth Amendment

On appeal, Lynn claims that the warrantless entry into his home by the Officers violated the Fourth Amendment to the United States Constitution. "The

fundamental purpose of the Fourth Amendment to the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings." *Trotter v. State*, 933 N.E.2d 572, 579 (Ind. Ct. App. 2010) (internal citations omitted). "The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched or from a third party who possesses common authority over the premises. *Id*. Stated differently, a valid consent to entry into a premises by an individual having common authority over or a sufficient relationship to the premises creates an exception to the warrant requirement. *See Halsema v. State*, 823 N.E.2d 668, 676 (Ind. 2005).

[17] In the instant matter, the record demonstrates that Linhart, who was involved in a long-term romantic relationship with Lynn, resided in the home with Lynn. Linhart's status as a co-inhabitant of the home is sufficient to give her the authority to give the necessary consent to allow the Officers to enter the home. *See U.S. v. Matlock*, 415 U.S. 164, 171 n.7 (1974) (providing that the authority which justifies the third-party consent rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched).

[18]   The record further demonstrates that Linhart validly and voluntarily consented to entry into the home by the Officers. Officer Walters testified that Linhart walked him and Officer Thalheimer up to the front door, opened the door, and escorted them into the home. Officer Thalheimer also testified that Linhart walked up to the front door with the Officers, pointed to Lynn who was lying inside on the floor, opened the door, and allowed the Officers to walk in with her.

[19]   In light of Linhart's position as a co-inhabitant of the home coupled with the Officers' testimony, the trial court reasonably concluded that Linhart gave consent for the Officers to enter the home. Further, even though Linhart, who later recanted her allegations against Lynn, and Lynn's mother indicated during the suppression hearing that the Officers entered without permission, the trial court was in the position to assess the witnesses' reliability and to determine which witnesses it found to be more believable. *See Graves v. State*, 472 N.E.2d 190, 191 (Ind. 1984) (providing that in a case where the parties present conflicting evidence, the trier-of-fact is not obliged to believe the testimony of the defendant or any other particular witness and it is the trier-of-fact's prerogative to weigh the evidence and to determine who, in fact, is telling the truth).

## 2. Article 1, Section 11

[20]   Lynn also claims that the warrantless entry into his home by the Officers violated Article I, Section 11 of the Indiana Constitution. Article I, Section II reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

"Although this language tracks the Fourth Amendment verbatim, we proceed somewhat differently when analyzing the language under the Indiana Constitution than when considering the same language under the Federal Constitution." *Trimble v. State*, 842 N.E.2d 798, 803 (Ind. 2006). "Instead of focusing on the defendant's reasonable expectation of privacy, we focus on the actions of the police officer, concluding that the search is legitimate where it is reasonable given the totality of the circumstances." *Id.* (citing *Moran v. State*, 644 N.E.2d 536, 539 (Ind. 1994)). We will consider the following factors in assessing reasonableness: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[21] As is stated above, the Officers entered Lynn's home at Linhart's invitation. As such, their entry was completely reasonable. *See generally, Starks v. State*, 846 N.E.2d 673, 679 (Ind. Ct. App. 2006) (providing that officers' entry into a residence did not violate Article I, Section 11 because the officers were allowed into the residence by a co-inhabitant of the residence who had the authority to admit the officers into the residence).

Furthermore, despite Lynn's claim to the contrary, the Officers' entry into the home was reasonable under the totality of the circumstances. The Officers had a high degree of suspicion that a battery had occurred. The Officers were dispatched to the home because of an alleged domestic disturbance and, upon arriving, found Linhart standing outside, visibly upset. The Officers observed that Linhart appeared to have suffered an injury to her lip. Linhart indicated that she had been involved in a physical altercation with her boyfriend, Lynn, with whom she lived in the home. Also, although the intrusion into one's home is generally a great intrusion upon their privacy, Lynn assumed the risk that Linhart, a co-inhabitant in the home, might permit the Officers to enter the common area *See Matlock*, 415 U.S. at 171 n.7 (providing that that it is reasonable to recognize that any of the co-inhabitants of a home has the right to permit entry into the home and that the others have assumed the risk that one of their co-inhabitants might permit entry into the common area of the home). Lynn, himself, never requested that the Officers leave the home or acted in a manner that would seem to override or object to Linhart's escorting the Officers into the home. Additionally, the Officers' need was substantial in that they were investigating a potential physical domestic dispute that resulted in injury to one of the parties. These factors indicate that the Officers' entry into the home was reasonable.

## II. Sufficiency of the Evidence

Lynn also contends that the evidence is insufficient to sustain his conviction for Class A misdemeanor resisting law enforcement.

# A. Standard of Review

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

# B. Relevant Authority

The offense of resisting law enforcement is governed by Indiana Code section 35-44-3-3, which provides, in relevant part, that "(a) A person who knowingly or intentionally: (1) forcibly resists, obstructs, or interferes with a law enforcement officer … while the officer is lawfully engaged in the execution of the officer's duties … commits resisting law enforcement, a Class A

misdemeanor." The word "forcibly" modifies "resists, obstructs, or interferes," making force an element of the offense. *See Graham v. State*, 903 N.E.2d 963, 965 (Ind. 2009); *Spangler v. State*, 607 N.E.2d 720, 723 (Ind. 1993). Thus, to convict Lynn of Class A misdemeanor resisting law enforcement, the State needed to prove that Lynn: (1) knowingly or intentionally (2) forcibly resisted, obstructed, or interfered with the Officers (3) while the Officers were lawfully engaged in the execution of their duties. One "forcibly resists," for purposes of forcibly resisting law enforcement, when one uses "strong, powerful, violent means" to evade a law enforcement official's rightful exercise of his or her duties. *Graham*, 903 N.E.2d at 965; *Spangler*, 607 N.E.2d at 726.

[26] In *Graham*, the Indiana Supreme Court held that in determining that an individual forcibly resisted, the force involved need not rise to the level of mayhem, and discussed with approval this court's determination in *Johnson v. State*, 833 N.E.2d 516 (Ind. Ct. App. 2005), that a defendant had forcibly resisted law enforcement officers by "push[ing] away with his shoulders while cursing and yelling" as the officer attempted to search him and by "stiffen[ing] up" as officers attempted to put him into a police vehicle, requiring the officers to "get physical in order to put him inside." *Graham*, 903 N.E.2d at 965-66. In *Glenn v. State*, 999 N.E.2d 859, 862 (Ind. Ct. App. 2013), this court concluded that the defendant exhibited sufficient force to sustain her conviction for resisting law enforcement when the defendant "on more than one occasion, 'aggressively' tried to pull away" from the arresting officer. In *Lopez v. State*, 926 N.E.2d 1090, 1094 (Ind. Ct. App. 2010), *trans. denied*, this court concluded

that the defendant exhibited sufficient force to sustain his conviction for resisting law enforcement when the defendant refused to stand or uncross his arms upon being ordered to do so by the arresting officer and attempted to pull away from the arresting officer, requiring the officer to use physical force to arrest him. Likewise, in *J.S. v. State*, 843 N.E.2d 1013, 1017 (Ind. Ct. App. 2006), *trans. denied*, this court concluded that the evidence was sufficient to sustain the juvenile's adjudication for what would be resisting law enforcement if committed by an adult when the evidence demonstrated that the juvenile "pulled," "yanked," and "jerked" away from the officer, and was "flailing her arms," "squirming her body," and "making it impossible for [the officer] to hold her hands."

## C. Analysis

[27] Lynn claims on appeal that the evidence is insufficient to sustain the trial court's determination that the Officers were lawfully engaged in their duties as law enforcement officers when they encountered Lynn. In making this claim, Lynn relies on his contention that the Officers unlawfully entered his home. However, having concluded above that the Officers did not unlawfully enter Lynn's home but rather entered with Linhart's consent, we conclude that Lynn's claim in this regard is unavailing.[1]

---

[1] In arguing that the Officers were not lawfully engaged in police duties when they entered the home he shared with Linhart, Lynn cites to *Adkisson v. State*, 728 N.E.2d 175 (Ind. Ct. App. 2000). Lynn's reliance on *Adkisson* is misplaced, however, because, unlike in the instant matter,

[28] Further, the Officers had probable cause to believe that Lynn was a suspect in an ongoing police investigation. *See generally Robles v. State*, 510 N.E.2d 660, 664 (Ind. 1987) (providing that probable cause exists where facts and circumstances within the knowledge of the officer, when based on reasonably trustworthy information, are sufficient for a reasonable person to believe an offense has been committed by the defendant). Again, the Officers were dispatched to the home because of a domestic disturbance. Upon arriving at the home, the Officers encountered Linhart, who was visibly upset and appeared to have sustained an injury to her lip. Linhart indicated that she had been engaged in a physical altercation with Lynn, identified Lynn to the Officers, and permitted them to enter the home she shared with Lynn. This evidence demonstrates that, despite Lynn's claim to the contrary, the Officers had probable cause to believe that Lynn had assaulted Linhart and, as such, were lawfully engaged in the execution of their police duties when they approached and detained Lynn. *See generally Robles*, 510 N.E.2d at 664.

[29] Lynn also claims that the evidence is insufficient to sustain a determination that he forcibly resisted the Officers. The evidence, however, demonstrates that Lynn, a suspect in the ongoing investigation into a potential domestic assault, used force to resist Officer Walters's attempt to detain Lynn.

---

in *Adkisson*, no resident of the apartment consented to the deputies' entry into the defendant's residence. 728 N.E.2d at 178.

[30] Again, the evidence demonstrates that after Linhart allowed the Officers to enter the home, Lynn, who appeared to be intoxicated, became belligerent when Officer Walters asked him for identification. Lynn "became very upset" and positioned himself in a manner which suggested that he was going to engage the Officers in a physical altercation after he witnessed an interaction between Officer Walters and his father. Tr. p. 40. The Officers repeatedly instructed Lynn to sit down.

[31] Officer Walters told Lynn that he was under arrest for the battery of Linhart and instructed Lynn to place his hands behind his back. Lynn initially complied. However, after Officer Walters got one handcuff on Lynn, Estel got up and made a motion as if he was going to charge Officer Walters. Tr. p. 42. Officer Thalheimer interceded, got between Officer Walters and Lynn's father, and pushed Lynn's father down onto the nearby couch. Lynn, who appeared determined to come to his father's aid, attempted to "jump up" and charge Officer Thalheimer.

[32] After attempting to charge Officer Thalheimer, Lynn braced himself and locked his legs and arms in an attempt to prevent Officer Walters from taking him to the ground. Officer Walters eventually managed to use his body weight to force Lynn to the ground. Lynn continued to struggle even after Officer Walters managed to force Lynn to the ground. After "some struggle," Officer Walters was able to bring Lynn under control. Tr. p. 43.

[33] The evidence presented at trial demonstrates that the Officers entered Lynn's home as they were investigating a potential domestic assault and were invited into the home by one of the co-inhabitants of the home. This evidence is sufficient to sustain the trial court's determination that the Officers were engaged in the lawful execution of their police duties when they entered the home. The evidence presented at trial also demonstrates that Lynn was agitated, charged at Officer Thalheimer while Officer Walters was attempting to place him in handcuffs, stiffened his arms and legs to resist being handcuffed, and continued to struggle even after he had been forced to the ground. This evidence is sufficient to sustain the trial court's determination that Lynn forcibly resisted the Officers. Lynn's claim to the contrary effectively amounts to an invitation for this court to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

## Conclusion

[34] In sum, we conclude that the Officers' entry into Lynn's home did not violate the warrant requirements of the Fourth Amendment and Article I, Section 11 because Linhart consented to the Officers' entry into the home. We also conclude that the evidence is sufficient to sustain Lynn's conviction for Class A misdemeanor resisting law enforcement.

[35] The judgment of the trial court is affirmed.

Vaidik, C.J., and Kirsch, J., concur.