## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 01 2020, 8:23 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katelyn Bacon
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Keith M. Brown, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | September 1, 2020 <br><br> Court of Appeals Case No. 20A-CR-559 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Angela Dow Davis, Judge <br><br> The Honorable Hugh Patrick Murphy, Magistrate <br><br> Trial Court Cause No. 49G16-1903-F6-8094 |

**Altice, Judge.**

## Case Summary

Following a bench trial, Keith Brown appeals his conviction of Class A misdemeanor resisting law enforcement, claiming that the State presented insufficient evidence to convict him. Brown raises two issues, of which we find the following dispositive: Did the State present sufficient evidence that the officer was lawfully engaged in the execution of his duties when he entered Brown's home and arrested him?

We reverse.

## Facts & Procedural History

At around 10:00 p.m. on March 2, 2019, Indianapolis Metropolitan Police Department (IMPD) Officers Kevin Tomes and Evan Davis were dispatched to a home on North Sharon Avenue, later determined to be Brown's residence. The officers' first contact with anyone at the scene was "with someone as they were coming out of the back of the home." *Transcript* at 17. The officers then made contact with Brown at the front door. Brown was inside the home, with the door open but behind the screen door, and the officers were on the front porch. Brown was immediately "very belligerent" and "very aggressive" with officers. *Id.* at 11, 18. The officers asked Brown to step onto the porch to speak with them, out of the presence of juveniles inside, but Brown refused. Based on their investigation at the scene, officers found probable cause to arrest Brown apparently for a domestic incident involving his wife, K.B.

[4]     Officers spent some time asking Brown to come outside, in order to avoid the arrest in front of the juveniles.  Brown refused, and when the officers eventually opened the screen door and attempted to go inside, Brown began to shut the interior door on the officers.  Officers Tomes and Davis, along with two or three officers now on the scene, entered the home "in a line" or "stack."  *Id*. at 19.  Once inside, officers ordered Brown to place his hands behind his back, and he refused.  The officers struggled to get control of Brown's arms, and Brown, along with some of the officers, fell to ground.  The officers "forcibly removed [Brown's] arms from underneath his body" and placed them behind his back and in handcuffs.  *Id*. at 21.

[5]     On March 3, 2019, the State charged Brown with six counts:  Counts I, II, and III alleged strangulation, domestic battery, and battery resulting in bodily injury for acts committed against K.B.; Counts IV and V alleged battery and domestic battery for acts committed against another individual in the household; and Count VI alleged that Brown committed Class A misdemeanor resisting law enforcement.  In May and June 2019, Brown subpoenaed K.B. to give a taped statement, and she did not appear on either occasion.  On October 7, 2019, the State dismissed all charges except the resisting law enforcement count.

[6]     Brown waived his right to trial by jury, and the court held a bench trial on January 27, 2020.   Officers Tomes and Davis testified to the above facts surrounding their interaction with Brown and his arrest.  Brown testified in his defense.  He stated that he "greeted [the officers] at the door" and "let them know their services . . . weren't needed here."  *Id.* at 23.  He described that

"[t]hey asked me if I would like to come outside a few times," but he did not want to go outside as he was not properly dressed and he felt they were "talking just fine through the door." *Id*. at 24. He stated that, at one point, he turned his back to the door to speak to his son, "to ask him to get me a shirt and some shoes because at that time I was gonna go outside because my wife was outside," and the officers "yanked the door open and tackled me." *Id*. He denied that he at any time used force against the officers.

[7] The trial court, after taking the matter under advisement, found Brown guilty and sentenced him to one year, all suspended and no probation. Brown now appeals. Additional facts will be provided below as necessary.

## Discussion & Decision

[8] Brown asserts that the State presented insufficient evidence to convict him. When we review the sufficiency of the evidence, we neither reweigh evidence nor judge witness credibility. *Tyson v. State*, 140 N.E.3d 374, 377 (Ind. Ct. App. 2020), *trans. denied*. We consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *New v. State*, 135 N.E.3d 619, 625 (Ind. Ct. App. 2019). Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Tyson*, 140 N.E.3d at 377.

[9] To convict Brown of Class A misdemeanor resisting law enforcement, the State was required to show that he knowingly or intentionally forcibly resisted,

obstructed, or interfered with a law enforcement officer "while the officer [wa]s lawfully engaged in the execution of the officer's duties." Ind. Code § 35-44.1-3-1. As our Supreme Court has observed, "this 'seemingly simple statute . . . has proven to be complex and nuanced in its application.'" *Harper v. State*, 3 N.E.3d 1080, 1083 (Ind. Ct. App. 2014) (quoting *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013)).

[10] On appeal, Brown concedes that the officers had probable cause to arrest him but asserts that they could not enter his home to do so without the presence of exigent circumstances. He claims that because the State failed to show the existence of any exigent circumstances, Officer Tomes was not lawfully engaged in the execution of his duties when he entered Brown's home. Therefore, Brown argues, the State failed to prove each element of the offense of resisting law enforcement. We agree.

[11] The warrantless arrest of a person in his or her home requires both probable cause and exigent circumstances that make it impracticable to first obtain a warrant. *Harper*, 3 N.E.3d at 1083 (multiple quotations omitted) (quoting from and citing *Paul v. State*, 971 N.E.2d 172, 176 (Ind. Ct. App. 2012); *Sapen v. State*, 869 N.E.2d 1273, 1277 (Ind. Ct. App. 2007), *trans. denied*; *Adkisson v. State*, 728 N.E.2d 175, 177 (Ind. Ct. App. 2000)).

[12] Brown relies on *Adkisson* in arguing that his conviction should be reversed. There, police officers were dispatched to an apartment complex to investigate a disturbance between neighbors. The officers were told that Adkisson had struck

her neighbors and injured them. An officer approached Adkisson's closed door, she opened it, and the officer

> stood just outside Adkisson's open doorway while he questioned her, and Adkisson remained inside her apartment. . . . At some point, Adkisson attempted to shut the door on [the officer], but he prevented her from doing so by placing his foot in the doorway. [The officer] then informed Adkisson that she was being arrested for battery and followed her into the residence. As [the officer] entered her apartment, Adkisson pushed him and began to run down the hallway. [The officer] followed Adkisson and sprayed her with mace. Adkisson continued to struggle and run from [the officer] until he had maced her three times. Being helplessly subdued, [two officers] were able to handcuff her.

728 N.E.2d 176-77. Adkisson was convicted of Class A misdemeanor resisting law enforcement, and she appealed her conviction arguing insufficient evidence.

[13] We reversed Adkisson's conviction for resisting law enforcement and stated that, although the officer "arguably had probable cause to believe that Adkisson had committed battery" and, therefore, "the right to arrest her without a warrant, . . . absent consent, the Fourth Amendment [nevertheless] requires that . . . an officer may only enter a defendant's home to make the arrest when exigent circumstances exist that make it impracticable to obtain a warrant first." *Id*. at 177. Thus, we held that the officer had acted unlawfully when he entered Adkisson's home, which meant that the State could not prove an essential element of the crime, namely, that "the officer was lawfully engaged in the execution of his duties as an officer."

[14] Here, officers responded to a dispatch to what was later determined to be Brown's home. Although there was no testimony describing what type of dispatch call it was or otherwise stating the reason they were being dispatched, Brown was ultimately charged with six offenses, including strangulation and domestic battery of K.B. At trial, Officer Davis testified that, upon arrival, the officers initially made contact with "someone" who had exited the rear of the home, and thereafter the officers spoke to Brown at the front door through the screen. *Transcript* at 17. Brown testified that initially he did not want to step outside but later decided to do so, as his wife was "outside." *Id*. at 24. While we can reasonably infer from this that the officers were responding to and investigating a domestic violence situation involving Brown and K.B, neither officer testified as to any exigent circumstances that required them to enter the home without a warrant. There was no evidence that the officers needed to enter the home in order to protect K.B. or anyone else. There was no evidence that Brown ever stepped out of the house or attempted to flee.

[15] The State suggests that when Brown attempted to shut his door and "retreat inside his home," such evidence "shows that [Brown] was taking flight in order to avoid arrest" and satisfied the requirement of exigent circumstances and justified a warrantless entry into the home. *Appellant's Brief* at 15. We are not persuaded, however, that Brown's act of continuously staying inside his house constitutes flight.

[16] Based on the scant record before us, we cannot conclude that Officer Tomes was lawfully engaged in his duties when he entered Brown's home and arrested

him. Accordingly, the evidence is insufficient to support Brown's conviction. [1] *See Harper*, 3 N.E.3d at 1085 (reversing defendant's conviction for resisting law enforcement where, although police officers responding to a domestic violence call developed probable cause at the scene to arrest defendant, they spoke to defendant through closed screen door, defendant denied officers entry into her home, and officers entered her home by using deception and without showing exigent circumstances to justify entry); *see also Cupello v. State*, 27 N.E.3d 1122, 1132 (Ind. Ct. App. 2015) (reversing defendant's conviction for Class A misdemeanor battery on a law enforcement officer where defendant, after speaking with apartment's security officer at defendant's open door, shut the door and struck the constable's foot that he had placed in the threshold of the door to keep defendant from shutting it, and thereafter constable, without a warrant or showing of exigent circumstances, opened defendant's door with key, entered the apartment, and arrested him).

[17] Judgment reversed.

Riley, J. and May, J., concur.

---

[1] We need not reach Brown's alternate argument that the State failed to show that he forcibly resisted.